**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| NORLIN OMAR CANALES-MELGAR, | § | |
| *Petitioner* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-01571-XR |
| | § | |
| KRISTI NOEM, SECRETARY, U.S. | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY; TODD LYONS, ACTING | § | |
| DIRECTOR, U.S. IMMIGRATION AND | § | |
| CUSTOMS ENFORCEMENT (ICE); | § | |
| MARCOS CHARLES, ACTING | § | |
| EXECUTIVE ASSOCIATE DIRECTOR, | § | |
| ICE AND REMOVAL OPERATIONS; US | § | |
| ATTORNEY GENERAL PAMELA | § | |
| BONDI, WARDEN SOUTH TEXAS ICE | § | |
| DETENTION CENTER, | § | |
| *Respondents* | § | |

## ORDER DENYING PETITON FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Petitioner Norlin Omar Canales-Melgar's Petition for Writ of Habeas Corpus (ECF No. 1).  After careful consideration, the petition is **DENIED.**

### BACKGROUND

Petitioner Norlin Omar Canales-Melgar is a citizen of Honduras who is currently detained at the South Texas Detention Center in Pearsall, Texas.  ECF No. 1-1.  Canales-Melgar entered the United States in 2017, without being "admitted or paroled after inspection by an immigration officer."  ECF No. 1-2.

Though the record is not entirely clear, it appears that Canales-Melgar was initially placed in expedited removal proceedings.  *Id.* (noting that an asylum officer found that Canales-Melgar demonstrated a credible fear of persecution or torture); 8 U.S.C. § 1225(b)(1)(A)(i), (b)(1)(B)(ii) (providing for credible fear interviews for noncitizens who are, absent a credible fear

1

determination in their favor, subject to expedited removal).  But because an asylum officer found that Canales-Melgar demonstrated a credible fear of persecution, he was not removed.  ECF No. 1-2.  Instead, he was placed into full removal proceedings under 8 U.S.C. Section 1229a and was released from detention.  *Id.*

Respondents assert that Petitioner was initially apprehended "upon his unlawful entry into the United States."  ECF No.5 at 1.  Petitioner has not denied this characterization, and his placement into expedited removal proceedings supports it.  *See* 8 U.S.C. 1225(b)(1)(A) (providing for expedited removal of arriving noncitizens and certain other designated noncitizens).  As does the fact that he both underwent a credible fear interview and was released from custody within just two weeks of his initial entry.  ECF No. 1-2 at 1.  It thus appears that Petitioner's initial apprehension in 2017 occurred when he was at the threshold of entry into the United States.

At some point, Immigration Customs and Enforcement ("ICE") re-detained Canales-Melgar.  ECF No. 1-1.  He remains in detention and has not received a bond hearing.  ECF No. 1 ¶ 37.

**DISCUSSION**

## I.  Legal Standard

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States."  *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."  *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d

2

1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## II. Analysis

The parties dispute whether the Court has jurisdiction to order the relief Petitioner has requested and whether Petitioner is entitled to that relief. The Court considers its jurisdiction before turning to the merits.

### a. Jurisdiction

As a general matter, the Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. Sections 1331 and 2241. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law."). Respondents argue that 8 U.S.C. Sections 1252(g) and 1252(b)(9) divest the Court of jurisdiction here. The Court disagrees.

### 1. Section 1252(g)

Respondents first argue that Section 1252(g) deprives the Court of jurisdiction. That subsection provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) (quoting 8 U.S.C. § 1252(g)). It "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision

to execute removal orders and thus does not implicate [S]ection 1252(g)." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at \*3 (W.D. Tex. Oct. 2, 2025) (cleaned up) (quoting *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000)).  Petitioner "does not challenge a decision to commence removal proceedings, adjudicate a case against him, or execute a removal order. . . . [H]e challenges the decision to detain him." *Guevara v. Swearingen*, No. 25 C 12549, 2025 WL 3158151, at \*2 (N.D. Ill. Nov. 12, 2025).  So Section 1252(g) does not divest the Court of jurisdiction.

### 2. *Section 1252(b)(9)*

Respondents next argue that 8 U.S.C. Section 1252(b)(9) precludes jurisdiction.[1] Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

This provision "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up).  It does not "'sweep within its scope claims with only a remote or attenuated

---

[1] Respondents also cite 8 U.S.C. Section 1225(b)(4) for this argument.  That section provides,

> The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

Respondents do not identify any decision "favorable to the admission of any alien" or allege that any "challenge" to such a decision has "operate[d] to take [Petitioner] before an immigration judge."  8 U.S.C. § 1225(b)(4).  The relevance of this provision is not apparent.

connection to the removal of an alien'. . . [or] preclude review of claims that 'cannot be raised efficaciously within the administrative proceedings' already available." *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (quoting *Aguilar v. I.C.E.*, 510 F.3d 1, 9 (1st Cir. 2007)).  Finally, it applies only "[w]ith respect to review of an order of removal."  8 U.S.C. § 1252(b); *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025); *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *2 (D. Colo. Oct. 24, 2025).

Respondents' argument that Section 1252(b)(9) deprives this Court of jurisdiction fails for at least two reasons.  First, Petitioner's claim—that Respondents lack "legal authority to subject [him] to mandatory detention under [Section] 1225 instead of detention with a bond hearing under [Section] 1226(a)"—"is not a review [of] an order of removal, the decision to seek removal, or the process by which removability will be determined."  *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3 (S.D. Cal. Nov. 4, 2025); *Aguilar*, 510 F.3d at 11 ("[T]he legislative history indicates that Congress intended to create an exception for claims 'independent' of removal.").

Second, Petitioner cannot "efficaciously" raise his claims "'within the administrative proceedings' already available."  *Duron*, 898 F.3d 647 (quoting *Aguilar*, 510 F.3d at 10).  The core of this dispute is whether Petitioner can be detained with no bond hearing—that is, with no administrative opportunity to contest his detention—pending a removal determination.  If Section 1252(b)(9) precluded this habeas petition, Petitioner's detention would be "effectively unreviewable," *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality), especially considering the BIA's novel position that immigration judges lack authority to even *entertain* bond requests, *Matter of Hurtado*, 29 I. & N. Dec. at 220.  "By the time a final order of removal was eventually

5

entered, the allegedly [illegal] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review." *Jennings*, 583 U.S. at 293.

In short, the Court has jurisdiction to consider Petitioner's claims.

b. Merits

1. *Statutory Authority to Detain Petitioner*

Turning to the merits, the first issue is whether Respondents are statutorily authorized to detain Petitioner without a bond hearing. Respondents point to 8 U.S.C. Section 1225(b)(1) for their detention authority. Section 1225(b)(1) provides for expedited removal of certain noncitizens. As noted above, Petitioner appears to have been subject to expedited removal proceedings. And he does not dispute that those proceedings were proper when they occurred.

If a noncitizen subject to expedited removal under Section 1225(b)(1) "indicates either an intention to apply for asylum" or "a fear of persecution," they are referred to an asylum officer for a credible fear interview. 8 U.S.C. § 1225(b)(1)(A)(ii). At that point, the noncitizen "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV). "If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the[ir] application for asylum." *Id.* § 1225(b)(1)(B)(ii). That is to say, they shall be detained until "consideration of the application for asylum" has concluded. *Jennings v. Rodriguez*, 583 U.S. 281, 297, 299 (2018).

In this case, Petitioner was subject to expedited removal and received a credible fear interview. The officer at that interview determined that Petitioner has a credible fear of persecution. And Petitioner's asylum application remains pending. So Section 1225(b)(1)(B)(ii)

6

authorizes his detention.  *See Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *3 (D. Mass. Nov. 7, 2025) ("Petitioner's detention continues to be governed by [S]ection 1225(b)(1), notwithstanding his case's transfer from expedited removal into section 1229a proceedings.").

"One might expect that, at some point in" their years of inaction, Respondents "waived [their] right to 'return' Petitioner to detention under [S]ection 1225." *Tenemasa-Lema v. Hyde*, No. CV 25-13029-BEM, 2025 WL 3280555, at *3 (D. Mass. Nov. 25, 2025).  But "as a matter of statutory interpretation and federal common law, courts generally must assume that 'an official's crucial duties are better carried out late than never.'" *Id.* (quoting *Nielsen v. Preap*, 586 U.S. 392, 411 (2019)).  For those reasons, Petitioner's detention without a bond hearing is authorized—indeed, required—by statute.

### 2.  Due Process

Petitioner also argues that his detention without a bond hearing violates the Fifth Amendment's Due Process Clause.  "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But that does not mean that *any* detention of *any* person subject to removal proceedings is constitutional.  "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Id.* at 523; *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States.  The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.").

### A.    *Thuraissigiam*

That said, not all noncitizens "are entitled to enjoy all the advantages of citizenship," and noncitizens need not "be placed in a single homogeneous legal classification." *Diaz*, 426 U.S.

at 78.  In *Thuraissigiam*, a noncitizen who had been detained twenty-five yards into the United States, just after entering the country, challenged his expedited removal.  He argued that due process required the availability of "judicial review of his allegedly flawed credible-fear proceeding."  *Id.* at 138.  The Supreme Court disagreed, holding that a noncitizen "at the threshold of initial entry" "has only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107, 140 (2020).

Respondents argue that that holding applies here, such that Petitioner is not entitled to any due process protections beyond those Congress has provided.  Ultimately, *Thuraissigiam* and the cases it relied upon preclude Plaintiff's due process challenge, but Respondents overstate the cases' broader effect on one's rights.

B.      The "Entry Fiction"

*Thuraissigiam* applies here because of a doctrine known as the "entry fiction."  As *Thuraissigiam* puts it, noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'"  591 U.S. at 139.  "The same [is] true of" noncitizens "detained shortly after unlawful entry."  *Id.* at 140.

Some courts have noted that *Thuraissigiam*'s "passing reference" to "those paroled elsewhere in the country" is dicta.  *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *26 (E.D.N.Y. Nov. 28, 2025).  But courts in the Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is recent and detailed."  *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (quoting *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

Beyond that, courts have argued that *Thuraissigiam*'s articulation of the entry fiction does not apply in cases like this one for two main reasons:  First, the petitioner in *Thuraissigiam*

8

challenged the process for *determining removability*, not for detention. *Rincon*, 2025 WL 3122784, at \*6; *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at \*9–10 (W.D. Tex. Sept. 22, 2025); *Rodriguez-Acurio*, 2025 WL 3314420, at \*27. Second, *Thuraissigiam* involved someone who was detained twenty-five yards from the border, right after entry, whereas Petitioner here lived "with relative freedom" in the United States for years. *E.g.*, *Rincon*, 2025 WL 3122784, at \*6; *Lopez-Arevelo*, 2025 WL 2691828, at \*9–10; *Rodriguez-Acurio*, 2025 WL 3314420, at \*26.

But those distinctions do not change the outcome here. For the proposition that the entry fiction applies to those paroled into the country, *Thuraissigiam* cited *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), *Leng May Ma v. Barber*, 357 U.S. 185 (1958), and *Kaplan v. Tod*, 267 U.S. 228 (1925). Those cases read together preclude Petitioner's due process claim independent of whether *Thuraissigiam* itself does so.

### C.    *Mezei*

*Mezei* involved a noncitizen "permanently excluded from the United States on security grounds but stranded . . . on Ellis Island because other countries w[ould] not take him back." *Mezei*, 345 U.S. at 207. The Court held that "harborage at Ellis Island is not an entry into the United States" for due process purposes, so the petitioner was "treated as if stopped at the border." *Id.* at 213, 215. For that reason, "[w]hatever the procedure authorized by Congress [was], it [was] due process." *Id.* at 212. As such, the Court held that the petitioner's "continued exclusion"— i.e., his detention on Ellis Island, *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001) (noting that the petitioner in *Mezei* was "indefinitely detained" on Ellis Island)—did not violate the Constitution. *Mezei*, 345 U.S. at 215.

9

The petitioner in *Mezei* was more obviously on the "threshold of entry" than Petitioner here. But the case is still relevant, because the Court applied the entry fiction to dismiss arguments against the petitioner's continued *detention*, not just his inadmissibility determination. *See also Zadvydas*, 533 U.S. at 693–94 ("[B]oth this Court's rejection of Mezei's challenge to the procedures by which he was deemed excludable and its rejection of his challenge to continued detention rested upon" the fact that he was treated "as if stopped at the border."). So the entry fiction applies to some detention-based due process claims.

### D.    *Leng May Ma* and *Kaplan*

*Leng May Ma* and *Kaplan* are more factually similar to this case. *Leng May Ma* involved a statute allowing the Attorney General to withhold deportation of certain noncitizens "within the United States." *Leng May Ma*, 357 U.S. at 185–86. The petitioner was paroled into the country while her admissibility was being determined, which she argued meant she was "within the United States" for purposes of the statute. *Id.* at 186. The Court disagreed. *Id.* at 190.

*Leng May Ma* was a statutory decision. But it relied heavily on due process caselaw. Most notably, it cited three due process cases for the proposition that "the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States." *Id.* at 188 (citing *Mezei*, 345 U.S. at 213; *United States v. Ju Toy*, 198 U.S. 253, 261 (1905); *Nishimura Ekiu v. United States*, 142 U.S. 651, 661 (1892)). In light of that, it found that a noncitizen who had been confined would not be "within the United States" under the statute. *Id.* It then characterized the question before it as "whether the granting of temporary parole somehow effects a change in the alien's legal status." *Id.* The Court answered in the negative, partially but not entirely on statutory grounds—

> The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was

10

never intended to affect an alien's status, and to hold that petitioner's parole placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court.

*Id.* at 190.

In sum, *Leng May Ma* is factually analogous to the case at bar—a noncitizen was allowed into the country pending a decision on their admissibility after initially appearing at a port of entry (or, here, being apprehended at the threshold of entry). And the analytical foundation for *Leng May Ma*'s holding—statutory though that holding technically is—was the entry fiction as it had been applied in the due process context. So the entry fiction can apply to someone who, like Petitioner, was allowed to live a life of relative freedom in the United States pending a decision on their admissibility.

In *Kaplan* the petitioner was ordered to be excluded in 1914. 267 U.S. at 229. At that time, she was about thirteen years old, and her father had already moved to the United States. *Id.* She could not be returned to Russia because of conflict in Europe. *Id.* She was initially kept at Ellis Island but in 1915 was "handed over to the Hebrew Sheltering and Immigrant Aid Society," which had agreed to care for her until she could be deported safely. *Id.* "The Society allowed her to live with her father," which she did. *Id.* Her father was naturalized as a United States citizen in 1920. *Id.* A warrant for her deportation was issued in 1923. *Id.*

The petitioner argued that, because she was "dwelling in the United States" when her father was naturalized, she too was now a citizen. *Id.* at 230. She also argued that a statute of limitations applicable to certain noncitizens "who shall have entered or who shall be found in the United States" prohibited her removal. *Id.* at 230–31. The Court rejected these arguments on the basis that the petitioner was not "dwelling in" and had not "entered" the country "within the meaning of the law." *Id.* That is to say, the Court applied the entry fiction.

While at Ellis Island, the petitioner was "to be regarded as stopped at the boundary line." *Id.* at 230.  And even after "her prison bounds were enlarged . . . , [s]he was still in theory of law at the boundary line and had gained no foothold in the United States."  *Id.*  Even though the petitioner was allowed to live a normal life in the United States for many years—and even though her father had become a citizen—the entry fiction still applied.

Like *Leng May Ma*, *Kaplan* was a statutory case.  But, also like *Leng May Ma*, it relied on due process cases for the propositions relevant here.  Most notably, it relied on a due process case for the proposition that, despite the petitioner's release from Ellis Island, the relative freedom with which she lived, and her father's citizenship, "she was still in theory of law at the boundary line." *Id.* (citing *Nishimura Ekui*, 142 U.S. at 661).  That is, of course, the key point here, and *Kaplan*'s reliance on a due process case for it makes clear that it applies in the due process context.

### E.    Summation and Other Constitutional Claims

In sum, *Mezei* makes clear that the entry fiction applies to some due process challenges based on the detention of a noncitizen.  *Leng May Ma* and *Kaplan* make clear that the entry fiction applies to someone who, like Petitioner, was initially encountered at the threshold of entry but has been allowed to live with relative freedom in the United States while their admissibility is determined.  Taken together, that means that Petitioner is treated for due process purposes as though he was stopped at the border.  He thus "has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.  And, again based on *Mezei*, detention can be "regarding admission" such that Petitioner's rights against it are limited.

But that does not mean Petitioner lacks all due process rights.  The "entry fiction" and its limitation of rights are limited to "immigration and deportation matters." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 623 (5th Cir. 2006); *Thuraissigiam*, 591 U.S. at 140 ("[A]n alien in

respondent's position has only those rights *regarding admission* that Congress has provided by statute." (Emphasis added)).   "The basis for limiting the constitutional protection afforded excludable aliens has been the overriding concern that the United States, as a sovereign, maintain its right to self-determination." *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir. 1987).   "As the history of its immigration policy makes clear, this nation has long maintained as a fundamental aspect of its right to self-determination the prerogative to determine whether, and in what numbers, outsiders without any cognizable connection to this society shall be permitted to join it." *Id.* (quoting *Garcia-Mir v. Smith*, 766 F.2d 1478, 1484 (11th Cir. 1985)); *see also Thuraissigiam*, 591 U.S. at 139 (The rule "regarding the due process rights of an alien seeking initial entry" "rests on fundamental propositions: The power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." (Cleaned up)).   Where the power to admit or exclude noncitizens is not meaningfully implicated, the entry fiction and its limitation on constitutional protections do not apply.

Due process claims remain available where, for example, there is reason to believe one's detention is for an impermissible purpose.  *See Demore*, 538 U.S. at 532–33  (Kennedy, J., concurring)[2] ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, *as part of the means necessary to give effect to the provisions*

---

[2] Justice Kennedy was the fifth vote for the relevant portion of the majority opinion in *Demore*.

*for the exclusion or expulsion of aliens*, would be valid." (Emphasis added)); *Lynch*, 810 F.2d at 1373 ("[T]he due process clause affords [noncitizens who are unlawfully] present in the United States protection from federal legislation declaring 'unlawful residence within the country to be an infamous crime, punishable by deprivation of liberty and property.'" (quoting *Wong Wing*, 163 U.S. at 237)). Similarly, because "no identifiable national interests . . . justify the wanton infliction of pain," the entry fiction does not preclude challenges to "gross physical abuse at the hands of state or federal officials." *Martinez-Aguero*, 459 F.3d at 623 (citing *Lynch*, 810 F.2d at 1373–74). These are just a few examples—many due process and other constitutional rights have nothing to do with one's admission to the country and are thus in no way affected by the entry fiction.

But Petitioner does not raise any such claims. He only challenges his detention pending removal proceedings. As discussed above, the entry fiction applies to such detention absent other constitutional problems. *See Mezei*, 345 U.S. at 215. So Petitioner's due process claim must fail.[3]

**CONCLUSION**

It is therefore **ORDERED** that Petitioner Norlin Omar Canales-Melgar's Petition for Writ of Habeas Corpus is **DENIED.**

A final judgment will issue separately.

---

[3] This Court has recently granted many habeas petitions challenging noncitizens' detention without a bond hearing pending the outcome of removal proceedings. *See, e.g.*, *Granados v. Noem*, No. SA-25-CA-01464-XR, 2025 WL 3296314 (W.D. Tex. Nov. 26, 2025); *Abdelalim-Elmetaher v. Thompson*, No. SA-25-CA-01608-XR, 2025 WL 3654267 (W.D. Tex. Dec. 16, 2025); *Estupinan Reyes v. Thompson*, No. SA-25-CA-01590-XR, 2025 WL 3654265(W.D. Tex. Dec. 12, 2025). But the petitioners in those cases had entered the country without inspection and had not been subject to expedited removal proceedings. So, unlike here, the respondents in those cases lacked statutory authority to detain the petitioners without a bond hearing. *See, e.g.*, *Abdelalim-Elmetaher*, 2025 WL 3654267, at *3–5. The Court granted the petitions on that basis and did not reach the due process issue. *See, e.g.*, *id.* at *2. Further, there was no evidence in those cases that the petitioners were initially apprehended at the threshold of entry, so even if the Court had addressed due process, the issue might have come out differently than it does here.

14

It is so **ORDERED**.

**SIGNED** this 23rd day of December, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE